UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

STEVEN L. MURR,                         )
                                        )
          Plaintiff,                    )
                                        )     3:10-CV-372
v.                                      )
                                        )     Judge Curtis L. Collier
TARPON FINANCIAL CORPORATION,           )
and KEVIN J. JONES,                     )
                                        )
          Defendants.                   )

## M E M O R A N D U M

Before the Court are cross motions for summary judgment. The first motion was filed jointly

by Defendants Tarpon Financial Corp. ("Tarpon") and Kevin J. Jones ("Jones") (collectively

"Defendants") (Court File No. 32). Defendants seek summary judgment on Plaintiff Steven Murr's

("Murr") claims brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§

1692 *et seq.* The second motion was filed by Murr himself, who seeks partial summary judgment

on some of his FDCPA claims (Court File No. 35). Both parties responded to each other's motions

(Court File Nos. 37, 38), although only Defendants replied (Court File No. 39). Additionally,

Plaintiff filed a supplemental brief pursuant to Local Rul 7.1(d) (Court File No. 45) to which

Defendants responded (Court File No. 48).

For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** both

parties' motions (Court File Nos. 32, 35).

Regarding Defendants' motion, the Court will **GRANT** the motion with respect to Murr's

claim that Tarpon violated the FDCPA when it did not obtain a collection license and his claim that

Jones violated the FDCPA when he listed attorney's fees on the March 2010 demand letter. The

Court will **DENY** Defendants' motion on Murr's claim that Tarpon is a debt collector, his claim that

Tarpon is vicariously liable for Jones's violations, his claim that Jones violated the FDCPA when he did not indicate that interest was accruing in the March 2010 letter, and his claim that Jones and Tarpon violated the FDCPA when they did not disclose that the civil warrant was a communication from a debt collector.

Regarding Murr's motion, the Court will **GRANT** the motion with respect to his claim that Tarpon is a debt collector and that Jones and Tarpon violated the FDCPA when they failed to indicate that the civil warrant was a communication from a debt collector. The Court will otherwise **DENY** Murr's motion.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Murr entered into a Retail Installment Contract and Security Agreement with Patriot Motors West, Inc. (Court File No. 32-1, Ex. A). Murr purchased a 2001 Dodge Stratus SE for a principal sum of $9,858.59. He financed the principal sum at an annual percentage rate of 25% over four years for a total cost of $16,340. The agreement provides that, in the event of default, Murr agreed to pay costs for collection, including court costs, attorney's fees, and fees for repossession, repair, storage, and sale of the vehicle. Patriot Motors assigned the agreement to Fairway Lending Corp. on the same day that Murr completed the finance agreement. Murr defaulted on the agreement when he failed to pay according to its terms (Court File No. 32-1, Sturm Aff., ¶ 6). Fairway Lending took possession of the vehicle in accordance with the terms of the agreement, but the proceeds from its sale were insufficient to satisfy Murr's total indebtedness (*id.* at ¶ 7).

Subsequently, in December 2008, Tarpon purchased all of Fairway Lending's assets, including Murr's security agreement, for $650,000 (*id.* at ¶ 8). Some of Fairway Lending's principals were also principals of Tarpon. According to Christie Sturm, controller of Tarpon, the

primary purpose of this purchase was for Fairway Lending to generate proceeds in order to pay down indebtedness of its own. Some of the assets purchased in this deal were similar to Murr's agreement but not all of them were in default when they were acquired. The only debts Tarpon owns are those purchased in this deal and Tarpon only collects on its own accounts (which, presumably, includes debts purchased from Fairway Lending).

In January 2010, Tarpon hired Jones to represent it in collecting Murr's debt. The fee arrangement between Tarpon and Jones was contingency: Jones would receive 20% of collected amounts plus expenses (Court File No. 31-2, Jones Aff., ¶ 2). Jones obtained a sworn account affidavit from Tarpon that indicated Murr's total indebtedness was $6,582.95. On March 22, 2010, he sent Murr a letter that indicated Murr owed $6,582.95 plus $1,316.59 in attorney's fees (*id.* at Ex. C). After receiving no response from Murr, Jones filed a civil action against him on behalf of Tarpon in General Sessions Court for Knox County, Tennessee (*id.* at Ex. D). The civil warrant sought $6,582.95 plus reasonable attorney's fees in the amount of $1,316.59 "plus court costs and pre and post judgment interest at the underlying contract rate" (*id.*).

On August 24, 2010, Murr filed suit against Tarpon and Jones. This case was originally assigned to the Honorable Thomas W. Phillips. In September 2012, Judge Phillips denied Defendants motion for judgment on the pleadings (Court File Nos. 25, 28). Subsequently the case was reassigned to the undersigned. The parties then filed the instant motions for summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex*

3

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    DISCUSSION

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). Courts should "begin with the language of the statute itself" when interpreting the FDCPA. *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). Courts also should use the "'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009) (quoting *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). By using the "least sophisticated consumer" standard, courts can ensure "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (quoting *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted)).

A.     **Tarpon**

1. **"Debt collector" or "Creditor"**

Tarpon argues it is a creditor under the FDCPA rather than a debt collector. This distinction is important because "creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (citation omitted); *see also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734-35 (6th Cir. 2007). Accordingly, if Tarpon is Murr's creditor it is not liable under the FDCPA.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include persons "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to

5

the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." *Id.* In contrast, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," though it does not include "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

The United States Court of Appeals for the Sixth Circuit recently articulated a standard for determining whether the owner of a debt is a creditor or debt collector.  In *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2012),  the Sixth Circuit considered, as to a specific debt, whether an entity that acquires the debt and seeks to collect on that debt could avoid being either a creditor or debt collector. The Sixth Circuit explained that "[b]oth the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly." *Id.* at 359. Further, the court noted § 1692a(6)(F)(iii) provides guidance on how to distinguish  between whether the entity is properly characterized as a creditor or debt collector. *Id.* Specifically, "[f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector *depending on the default status of the debt at the time it was acquired.*" *Id.* (emphasis added). *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (noting "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not"); *see also F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007).

Tarpon does not, as did the defendant in *Bridge*, argue it is *neither* a debt collector nor a creditor.  Rather, Tarpon argues it is the creditor in this case in spite of the fact that it obtained the

underlying debt after it went into default. Attempting to distinguish *Bridge*, Tarpon argues the *Bridge* court simply did not consider the impact of the following provision of the FDCPA:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default *solely* for the purpose of facilitating collection of such debt for another.

15 U.S.C. 1692a(4) (emphasis added). Tarpon has offered proof that it purchased Murr's debt as a part of a larger purchase of assets from Fairway Lending. According to Tarpon, "[t]he primary purpose of the transaction evidenced by the Purchase Sale Agreement was to generate proceeds to pay towards the indebtedness that Fairway Lending owed to Wells Fargo Preferred Capital, Inc. secured by all of Fairway Lending's assets and personally guaranteed by principals of both Fairway Lending and Tarpon." Therefore it did not purchase the debt *solely* for the purpose of facilitating the collection of the debt. In light of this, Tarpon contends it is an entity "to whom a debt is owed" and is thus the "creditor" with respect Murr's debt.

The Court is not so convinced. The *Bridge* court did not equivocate when stating its view of this question: "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge*, 681 F.3d at 359. Tarpon may identify other provisions of the FDCPA that the *Bridge* court did not discuss, but the Court assumes the Sixth Circuit was aware of the relevant provisions of the statute when it announced its decision in *Bridge*. In fact, the court held "that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Id.* at 362. Section 1692a(6)(F)(iii) describes entities or individuals who are explicitly excluded from the term "debt collector." *See* 15 U.S.C. §

7

1692a(6)(F)(iii) ("The term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person . . . ."). Moreover, the *Bridge* court made clear that the categories are mutually exclusive: "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Id.* at 359 (quoting *Check Investors*, 502 F.3d at 173). *But see Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 n.2 (9th Cir. 2013) (declining to adopt a "per se" rule that a defendant cannot be both a debt collector and a creditor) In this case, Tarpon fits into *Bridge*'s definition of the term debt collector pursuant § 1692a(6)(F)(iii). Accordingly, because Tarpon fits into the definition of a debt collector as articulated in *Bridge*, it cannot be a creditor.

In light of the clear direction by the circuit in *Bridge* that an entity purchasing a debt after it is in default shall be considered a debt collector under the FDCPA, the Court will **DENY** Tarpon's motion on this ground. Because there are no disputed facts on this issue, the Court will **GRANT** Murr's partial motion for summary judgment on this question. Tarpon is a debt collector under the FDCPA.

### 2. Collection Service

Having concluded that Tarpon is a debt collector under the FDCPA, the Court must consider whether any genuine issue of material fact remains with regard to Murr's FDCPA claim against Tarpon. Murr claims Tarpon has violated §§ 1692e, 1692e(5), 1692e(10), and 1692f. However, all of these provisions were allegedly violated in the same way: Murr claims Tarpon is a "collection service" under Tennessee state law and was required to obtain a collection license. Because it did not, Murr claims Tarpon violated the FDCPA when it sought to collect on Murr's debt without a

license.

The Tennessee Collection Service Act provides "[n]o person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under [the Tennessee Collection Service Act] or prior state law." Tenn. Code Ann. § 62-20-105(a). A "collection service" is defined as "any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity." Tenn. Code Ann. § 62-20-102(3).

As the Court has previously noted in other cases, the Tennessee Collection Service Board has issued a Clarification Statement to the general definition of a "collection service." *Robinson v. Sherman Fin. Grp.*, – F. Supp. 2d –, No. 2:12-cv-30, 2013 WL 3968446, at *9-10 (E.D. Tenn. July 31, 2013). The Board has the authority to "promulgate rules relating to the general conduct of collection service business that are consistent with recognized business practice and this chapter [of the TCSA]," Tenn. Code Ann. § 62-20-104(g), and to "suspend, revoke or refuse to renew any license" as provided by statute. Tenn. Code Ann. § 62-20-115(b). The Clarification Statement at issue reads as follows:

> It is currently the opinion of the Tennessee Collection Service Board that entities who
> purchase judgments or other forms of indebtedness will be deemed a "collection service" if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. However, *entities who purchase debt or judgments in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or a licensed attorney or law firm shall not be deemed to be a "collection service"*.

9

Tennessee Collection Service Board, *Clarification Statement of the Tennessee Collection Service Board Regarding Debt/Judgment Purchasers and 'Passive' Debt Buyers*, http://www.tn.gov/regboards/collect/documents/CSBCLARIFICATIONSTATEMENTREGARDINGDEBT.pdf (emphasis added).[1]

The Court notes this issue has created some disagreement in this district. For instance, the Honorable J. Ronnie Greer explicitly disagreed with the Court's conclusion in *Robinson* and held that entities such as Tarpon must obtain a collection service license notwithstanding the Clarification Statement. *See Raceday Center, LLC v. RL BB Financial, LLC, et al.*, No. 2:11–CV–17, 2013 WL 4500437, at *1 n.2 (E.D. Tenn. Aug. 21, 2013). In so doing, Judge Greer relied on his prior holding on the issue in *King v. Midland Funding LLC*, No. 2:11–CV–120 (E.D. Tenn. Aug. 30, 2012). However, the Honorable Thomas A. Varlan cited *Robinson* with approval in *White v. Sherman Financial Group, LLC*, – F. Supp. 2d –, No. 3:12–CV–404, 2013 WL 5936679, at *7 (E.D. Tenn. Nov. 4, 2013) and declined to follow his prior, conflicting opinion in *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12–CV–364, 2013 WL 38344008 (E.D. Tenn. Aug. 2013).

For the reasons articulated above, the Court relies on its analysis in *Robinson* that gives effect to the Clarification Statement. Murr's arguments to the contrary are unavailing. The Attorney General opinion on which he relies, Attorney General Opinion 97-131, predates the Clarification Statement. *See Robinson*, 2013 WL 3968446, at *10 ("Plaintiff also argues Attorney General Opinion 97–131 and the district court decision in *Smith v. LVNV Funding, LLC*, 894 F. Supp. 2d

---

[1] "Although the statement was initially issued in January 2009, prior to the 2009 amendments to the TCSA, . . . the Board reaffirmed the Clarification Statement subsequent to the 2009 amendments to the TCSA. In fact, the Board as recently as May 9, 2012, reaffirmed the statement at one of its meetings 'and advised it would currently stand as written.'" *Robinson*, 2013 WL 3968446, at *10.

1045 (E.D. Tenn. 2012) interpreted the statute differently. However, the Court observes that the Clarification Statement was not at issue in these matters either because it was not yet in existence or because it was not disputed by the parties, respectively.").  Moreover, with respect to his argument the Clarification Statement should be ignored or given little weight, the Court agrees with Judge Varlan's observation in *White*:

> While the parties devote a significant portion of their respective briefs arguing whether the Clarification is a formal rule promulgated under the statute, or merely guidance in the interpretation thereof, the Court notes that it does not appear the Board was acting under its rulemaking authority, and that the Statement merely represents the Board's collective opinion. This, however, does not diminish the Court's ability to consider the persuasiveness of the Clarification Statement, particularly in light of the respect and deference given by courts to the interpretation of statutes by administrative agencies. *See Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn.1997).

*White*, 2013 WL 5936679, at *7 n.3.[2]

In this case, because Tarpon assigned the collection activity to Jones, it is not required to obtain a license. *See Robinson*, 2013 WL 3968446, at *10.  Relying on the Clarification Statement and *Robinson*, the Court concludes Murr has failed to demonstrate a genuine dispute of material fact on this question.  The Court therefore will **GRANT** Tarpon's motion and **DENY** Murr's motion with respect to Murr's claims that rely on Tarpon's failure to obtain a Collection Service license.

### 3. Vicarious Liability

Murr also claims Tarpon may be held liable for Jones's violations under a *respondeat superior* theory.  This Court, and others, have held vicarious liability in the FDCPA context is

---

[2] Murr's citation of *H & R Block Eastern Tax Services, Inc. v. State, Dep't of Commerce & Ins., Div. of Ins.*, 267 S.W.3d 848 (Tenn. Ct. App. 2008) does not change the Court's view of this question.  *H & R Block* considered the standard of review and deference to be given an agency ruling, not the degree to which a court should rely on interpretive guidance provided by a clarification such as that provided in this case.

11

appropriate in some circumstances. *See Robinson*, 2013 WL 3968446, at *12 n.4; *see also White*, 2013 WL 5936679, at *10-11. Defendants point to *Wadlington v. Credit Acceptance Corp.*, in which the Sixth Circuit indicated a *non-debt collector* may not be held liable for violations of the FDCPA under a *respondeat superior* theory. 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'"). Because the Court has concluded Tarpon *is* in fact a debt collector, the concern articulated in *Wadlington* is not present here.

The Court therefore will **DENY** Defendants' motion on this point.

## B. Jones

Murr alleges Jones violated the FDCPA in three ways: (1) by not indicating in his initial communication to Murr that Tarpon was seeking interest; (2) by seeking attorney's fees not authorized by the contract; and (3) by not including certain information required by the FDCPA in the civil warrant.

### 1. Debt Amount

Murr alleges Jones violated the FDCPA by misrepresenting the amount of his debt in the March 22, 2010 letter. The letter indicated Murr owed $6,582.95 plus $1,316.59 in attorney's fees (Court File No. 31-2, Jones Aff., ¶ 2). However, when Jones filed the civil suit against Murr, the complaint indicated Tarpon sought $6,582.95 plus reasonable attorney's fees in the amount of $1,316.59 "plus court costs and pre and post judgment interest at the underlying contract rate" (*id.* at Ex. D). Because the letter failed to indicate interest was also being sought, Murr argues, Jones violated FDCPA.

12

Murr alleges Jones violated § 1692g(a)(1)[3] which requires that disclosures be made in the initial communication to the debtor including "the amount of the debt." If all of the information required by § 1692g is not included in the initial communication, then the debt collector must send a notice within five days of the initial communication containing the required information. 15 U.S.C. § 1692g(a). As other courts in this district have indicated, the Sixth Circuit has not addressed what is to be included in a communication to meet the "amount of debt" requirement of § 1692g. *Lilly*, 2013 WL 3834008, at *6. As such, many courts, including courts in this district, have looked to the Seventh Circuit's decision in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). *See id.*; *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, No. 2:11–CV–13, 2011 WL 3489685, at *5 n.1 (E.D. Tenn. Aug. 9, 2011). Those courts have concluded, consistent with *Miller*, that costs and accruing interest must be disclosed in the initial communication to comply with § 1692g.

In *Miller*, the debt collector's letter stated the unpaid principal amount but noted that it did not include "accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement." 214 F.3d at 875. The letter indicated the plaintiff should call the debt collector's office to determine the total amount due since the "amount to reinstate or pay off [his] loan changes daily." *Id.* The court rejected this language, concluding that the FDCPA requires "statement of the debt" and the unpaid principal balance is only "part of the debt." *Id.* the court created a "safe harbor" for debt collectors to satisfy the "amount of the debt" provision where the debt varies daily based on

---

[3] Although Murr's response to Defendants' motion for summary judgment argues Jones's failure to disclose accruing interest violated both § 1692g(a)(1) *and* § 1692e(2)(A), the amended complaint only alleges this failure violated § 1692g.

certain factors such as interest:

> "As of the date of this letter, you owe $ ____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number]."

*Miller*, 214 F.3d at 876.

The March 22, 2010 letter supports Murr's allegation that Jones violated these provisions of the FDCPA. Simply put, Tarpon sought interest on the outstanding balance as demonstrated by the civil warrant, but the initial communication did not indicate this fact. The letter's recitation of the principal amount violated § 1692g because it did not include the total amount due. *See Lilly*, 2013 WL 3834008, at *6-7; *Stonecypher*, 2011 WL 3489685, at *5-6.

To avoid application of these cases, Defendants point to the Seventh Circuit's decision in *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) which held that "a debt collector need not break out principal and interest; it is enough to tell the debtor the bottom line." In *Hahn*, the court held that a debt collector had not violated the FDCPA when it combined the interest and principal balance into one "amount due." "An 'amount' that is due can include principal, interest, penalties, attorneys' fees, and other components. Interest then can be added to that total." *Id.* at 756-57.

However, *Hahn* is easily distinguishable from this case: Here, no mention was made of interest due at all and at least some portion of the amount of interest to be collected was not included in the balance reflected in the letter. The amount in the civil summons and the amount in the letter are the same with respect to the balance due and the attorney's fees sought. But the civil summons additionally seeks interest accruing before judgment is entered. The documents plainly reflect that

14

Tarpon was seeking more than the amount included in the March 22, 2010 letter and that Jones violated § 1692g when he failed to accurately reflect what was due. This is not a matter of failing to "break down" the principal and interest; this is a matter of failing to inform Murr that interest was accruing.

The Court also finds guidance in *Stonecypher*. There, the plaintiff received a first collection letter that stated the balance due. The plaintiff then received a second collection letter that stated the same balance but attached two statements with higher balances that indicated interest was accruing. Finally, the civil warrant stated the original balance but also reflected that interest was accruing and the defendant was seeking attorneys fees and costs if provided by the contract. 2011 WL 3489685, at *5. The court concluded these inconsistencies precluded dismissal. Applying the least sophisticated consumer standard, the court noted "the [initial] letter . . . did not correctly state the amount of the debt because it failed to indicate that interest was accruing and the applicable interest rate." *Id.* This established a violation of § 1692g.

Here, Jones failed to inform Murr that interest was further accruing on his debt and that Murr would be responsible for paying that amount as well. As was the case in *Stonecypher*, the letter at issue here "did not correctly state the amount of the debt because it failed to indicate that interest was accruing and the applicable interest rate." *Id.* The Court finds *Stonecypher* compelling on this point and similarly concludes that Murr has established a violation of the FDCPA. *See also Lilly*, 2013 WL 3834008, at *6-7 (holding that notification of the possibility of interest is insufficient to satisfy the safe harbor in *Miller*).

Nor are Defendants' additional arguments convincing. Defendants argue the failure to inform Murr he also owed accruing interest was not a *material* mis-statement in that it would not

15

mislead the least sophisticated consumer. The case Defendants rely upon, *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009), involved a violation of § 1692e. This case, as indicated *supra* note 3, involves only a violation of § 1692g on this point. Defendants' additional argument that Jones was entitled to rely on his client's information concerning the debt carries little weight in this case. It was *Jones* who filed the civil summons and indicated interest continued to accrue. Jones knew interest was accruing and failed to indicate as much on the March 2010 letter. Such a failure constitutes a violation of the FDCPA.

Accordingly, the Court will **DENY** Defendants' motion on this ground.

### 2. Attorney's Fees

Murr also alleges Jones violated the FDCPA when he sought $1,316.59 in attorney's fees in both the March 2010 letter and in the eventual civil suit. Murr alleges these acts violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(2)(10), 1692f and 1692f(1).

Section 1692e of the FDCPA generally provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." To establish a violation of § 1692e, "(1) plaintiff[] must be a 'consumer' as defined by 15 U.S.C. § 1692; (2) the 'debt' must arise[] out of transactions which are 'primarily for personal, family or household purposes' (*see* 15 U.S.C. § 1692a(5)); (3) defendant must be a 'debt collector' as defined by 15 U.S.C. § 1692a(6); and (4) defendant must have violated § 1692e's prohibitions." *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009). At issue here are the following provisions of § 1692e, which prohibits

> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received
> by any debt collector for the collection of a debt.

16

. . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. For purposes of their motion for summary judgment, Defendants have not disputed that Murr was a consumer, that the "debt" arose out of transactions "primarily for personal, family or household purposes," and that Jones was a "debt collector." The only element in dispute is whether the Jones violated any of the § 1692e provisions.

Section 1692f pertains to whether the debt collector used "unfair or unconscionable means" in its efforts to collect the debt and § 1692f(1) addresses whether those means were used with respect to "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Murr's theory is Jones was not authorized to seek attorney's fees under the contract.

However, as Defendants note, the contract in this case authorizes Jones to seek attorney's fees. The agreement provides that "[i]f [Murr] default[s], [Murr] agree[s] to pay [Tarpon's] costs for collection amounts owing, including, without limitation, court costs, *attorney's fees*, and fees for repossession, repair, storage and sale of the Property securing the contract." (Court File No. 32-1, Ex. A). Defendants also point to case law suggesting a demand for attorney's fees provided by the underlying contract does not violate the FDCPA. In *Spangler v. Conrad*, the plaintiff received a collection letter from an attorney seeking nearly $300 in attorney's fees. No. 2:08-CV-234, 2010 WL 2389481, at *4 (E.D. Tenn. June 9, 2010). The court concluded that, although "there was no liquidated amount of attorneys' fees[,] . . . the loan agreement provided for 'reasonable attorneys' fees' if collection efforts were necessary." *Id.* In light of the "time and effort" expended in

17

collecting the plaintiff's debt, making a demand on the plaintiff for payment of the attorney's fees was not a violation. *Id.*

The court in *Spangler* relied on *Fields v. Wilber Law Firm*, 383 F.3d 562 (7th Cir. 2004). Considering a similar claim to that in this case–that "unilaterally determining $250 to be the amount of attorneys' fees charged" violates the FDCPA–the court concluded the plaintiff was asking the court "to endorse an approach that would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs. Plainly stated, the statute does not require such an extraordinary result." *Id.* at 564. "To collect attorneys' fees from [the plaintiff], [the defendant] necessarily had to specify an amount that it intended to charge (or had already charged) for its services. " *Id.* at 565. The court held "when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter." *Id.* In fact, the court noted, *not* informing the plaintiff that the debt collector is seeking attorney's fees could be a violation of the FDCPA under *Miller*.

Defendants note the agreement signed by Murr in this case also provided for the collection of attorney's fees. Murr argues, however, the attorney's fees sought in this case were not allowed by the agreement between Jones and Tarpon. According to proof submitted by Defendants, the fee agreement was "a contingency fee of twenty percent (20%) of any and all sums collected plus expenses" (Court File No. 32-2, Jones Aff., ¶ 2). Since the fee arrangement was contingent on sums *collected*, Murr reasons that Jones could not demand a specific amount of attorney's fees because nothing had yet been collected. He cites some cases suggesting such a demand is a violation of the

18

FDCPA. *See Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, No. 1:04-CV-733, 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005); *Bernstein v. Howe*, IP 02–192–C–K/H, 2003 WL 1702254 (S.D. Ind. Mar. 31, 2003).[4]

Respectfully, the Court declines to follow these cases. *Stolicker* and *Bernstein* both adopt the view that resort to judicial proceedings is necessary before an attorney's fee can be demanded. *Stolicker*, 2005 WL 2180481, at *5 ("A reasonable attorney fee requires a judicial evaluation of the evidence regarding the fee."); *Bernstein*, 2003 WL 1702254, at *5 ("At most, there was the potential for an award of attorney's fees in the future, in the event that First Card incurred attorney's fees as a result of pursuing legal proceedings against Bernstein."). But as the *Fields* court noted, the approach advocated by Murr, and adopted to some degree by the cases he has cited, "would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs." *Fields*, 383 F.3d at 564. The FDCPA does not require this.

Moreover, the case on which *Bernstein* primarily relied, *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003), was distinguished in *Fields* because, whereas *Veach* dealt with a statutory attorney's fee award that could only be determined in litigation, the plaintiff in *Fields* had contractually agreed to pay attorney's fees incurred in the collection of his debt. This logic, however, was rejected in *Bernstein*: "Whether contractual or statutory, the fact remains that no attorney's fees actually were owed by Bernstein at the time Howe sent his letter." *Bernstein*, 2003 WL 1702254, at *5. Given that

---

[4] Murr also cites *Reichert v. Nat'l Credit Sys., Inc.*, No. CV–03–1740, 2005 WL 5549677, at *3 (D. Ariz. Mar. 31, 2005). However, that case is clearly distinguishable as it involved an attorney's fees clause limited to "the prevailing party" in a "legal action to enforce compliance" with the agreement. Here, on the other hand, the agreement provided for attorney's fees incurred in the collection of Murr's debt; the clause in this case was not limited to fees incurred in a legal action.

this was the basis of the *Fields* decision, which followed *Bernstein*, it is not clear whether *Bernstein* remains good law for this question.

To the extent these cases conflict with the reasoning of *Fields* and *Spangler*, the Court finds the analysis of the latter cases convincing. The agreement Murr signed provided he would pay attorney's fees if he defaulted on his debt. After he did, the attorney who was assigned the duty of collecting his debt abided by the language of the agreement and demanded attorney's fees. This was in keeping with the agreement and did not violate the FDCPA.

That the agreement between *Defendants* provided Jones would be entitled to a percentage of the amounts collected does not distinguish this case from *Fields* and *Spangler*. Neither *Fields* nor *Spangler* involved a sum certain. The *Fields* and *Spangler* contracts merely provided for a "reasonable" attorney's fee. The fee in this case is actually *more* certain as it relates specifically to the amount in the demand.[5] Moreover, once Murr paid the demanded amount, the funds would be collected and the attorney's fee would be due. Were Murr's argument to prevail, debt collectors would be required to undergo a second round of debt collection, this time just for the attorney's fee. Such a second round itself may violate the FDCPA, as the total amount of the debt must be reflected in the initial communication. *See Fields*, 383 F.3d at 565 ("Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt.") (citing *Miller*, 214 F.3d at 875-76); *see also Hahn*, 557 F.3d at 756-57 ("An 'amount' that is due can include principal, interest, penalties, attorneys' fees, and other components.").

In a supplemental brief, Murr cites *Bradley v. Franklin Collection Serv., Inc.*, – F.3d –, No.

---

[5] And, of course, every attorney's fee must be reasonable. Tennessee Supreme Court Rule 8, Rules of Professional Conduct, Rule 1.5(a) ("A lawyer's fee and charges for expenses shall be reasonable.").

13–12276, 2014 WL 23738 (11th Cir. Jan. 2, 2014). In *Bradley*, the defendant was hired to collect the plaintiff's debt. The plaintiff's creditors hired the defendant and agreed that it would be paid a percentage attorney's fee of the total collected from each debt. The plaintiff had agreed to pay "all costs of collection" including reasonable attorney's fees with regard to both of the creditors. In addition to the contingent attorney's fee, a 33-and-1/3% collection fee was added to the total amount of debt before it was transferred to the attorney for collection.

The Eleventh Circuit concluded this percentage-based collection fee violated the FDCPA. The court held that "[the defendant] failed to direct this Court to any evidence that the 33–and–1/3% 'collection fee'—which was assessed *before* [the defendant] attempted to collect the balance due—bears any correlation to the actual cost of [the defendant's] collection effort. As such, the 33–and–1/3% fee breaches the agreement between [the plaintiff] and [the creditor], since, contractually, [the plaintiff] was only obligated to pay the 'costs of collection.'" *Id.* at *3. Because there was no "express agreement" between the plaintiff and the creditor allowing for such a collection fee, the court held that it violated the FDCPA. Although noting "a percentage-based fee can be appropriate if the contracting parties agreed to it[,]" under the agreement at issue in *Bradley*, the plaintiff "agreed to pay the actual costs of collection; he did not agree to pay a percentage above the amount of his outstanding debt that was unrelated to the actual costs to collect that debt." *Id.*

The Court concludes this case is distinguishable from *Bradley*. Here, the disputed quantity is Jones's percentage-based, contingent fee. In *Bradley*, on the other hand, the court condemned the 33-and-1/3% "collection fee" included in the debt amount *separate from* the attorney's contingent fee. The Court agrees with both *Bradley* and a case on which *Bradley* relies, *Kojetin v. CU Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000), that an arbitrary collection fee assessed in addition to the

21

outstanding debt is a violation of the FDCPA where the debtor has not agreed to pay such a fee. But this case involves a contingent *attorney's* fee. There is simply nothing improper about basing an attorney's fee on the percentage of debt collected. *See* Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(c) (acknowledging contingent fees are proper in some circumstances). Once the debt is collected, Jones is entitled to take his share. At that point, Tarpon has paid the attorney's fee. Thus the percentage fee is an actual "cost" incurred by Tarpon in the collection of Murr's debt and seeking to recoup that cost as agreed in the underlying contract was not a violation of the FDCPA.

Accordingly, the Court concludes that the attorney's fees demand in the March 2010 letter was proper. The Court will therefore **GRANT** Defendants' motion on this ground.

### 3. Civil Summons

Murr claims Jones violated 15 U.S.C. § 1692e(11) when he filed a civil warrant in General Sessions Court with an attached sworn affidavit and other attachments that did not contain certain disclosures mandated by the FDCPA. Section 1692e(11) provides that "the failure to disclose in subsequent communications that the communication is from a debt collector" constitutes a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Because the sworn affidavit and other attachments were served upon him with the civil warrant, Murr argues it constitutes a "subsequent communication" on which Jones did not include the necessary disclosures. Defendants, the other hand, point to the clause immediately following the "subsequent communication" provision of § 1692e(11): "except that this paragraph shall not apply to a formal pleading made in connection with a legal action." Thus the Court must determine whether the sworn affidavit (and other documents attached to the civil warrant) constitute "formal

22

pleadings" made in connection with a legal action.

An action in General Sessions Court is commenced by the filing of a civil warrant like the one filed in this case. Tenn. Code Ann. § 16-15-716 ("A civil action in the general sessions courts is commenced by a civil warrant . . . ."). Tennessee courts have recognized that the civil warrant itself is the means of pleading in General Sessions. *See Discover Bank v. Henson*, No. M2007-02749-COA-R3-CV, 2008 WL 5272530, at *2 (Tenn. Ct. App. Dec. 18, 2008) ("[A] plaintiff's pleading in general sessions court, in the form of a civil warrant, may be very informal . . . ."); *Mayes v. LeMonte*, 122 S.W.3d 142, 147 (Tenn. Ct. App. June 6, 2003). Tennessee courts, however, have also referred to the civil warrant as "informal." *See, e.g.*, *McPherson v. Shea Ear Clinic, P.A.*, No. W2004-00690-COA-R3CV, 2005 WL 1220160, at *2 (Tenn. Ct. App. May 18, 2005) ("While the Tennessee Rules of Civil Procedure apply to cases appealed from general sessions court to circuit court, the parties are not required to file formal pleadings. They may, however, file pleadings, engage in discovery and take advantage of the procedural tools provided in said rules."). Thus the Court is faced with a bit of a quandary: civil warrants are pleadings, but they may not be *formal* pleadings.

The Court is not the first to consider this issue. In *Lilly*, the plaintiff made a similar argument to Murr's argument here: the civil warrant and sworn affidavit did not contain a disclosure, and accordingly the defendant violated 15 U.S.C. § 1692e(11). The court disagreed because "[t]he civil warrant in this case serves the same purpose in a general sessions court case as the complaint does in other courts, as it is the manner in which an action is commenced in a general sessions court." *Lilly*, 2013 WL 3834008, at *7 (citing Tenn. Code Ann. § 16–15–716). Moreover, "the sworn affidavit attached to the civil warrant serves as the means to conclusively establish the amount

23

owed, such that it becomes a necessary part of the complaint." *Id.* (citing Tenn. Code Ann. § 24–5–107). In light of these considerations, the Court dismissed the § 1692e(11) claim.

However, Plaintiff points to *Collins v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-138 (E.D. Tenn. June 7, 2013), an unpublished case from this district concluding that a civil warrant is *not* a formal pleading under Tennessee law. The court relied on state cases indicating that a civil warrant is simply not a "formal" pleading under Tennessee law. *See Nicholson v. Lester Hubbard Realtors, et al.*, No. W2010–00658–COA–R3–CV, 2010 WL 4244135, at * (Tenn. Ct. App. Oct. 28, 2010) ("Because Plaintiff's civil warrant merely alleged that Defendants were being sued "for negligence and violation of the Consumer Protection Act . . . we find no error in the trial court's decision to require Plaintiff to file a formal complaint . . . ."); *McPherson*, 2005 WL 1220160, at *2. However, because the civil warrant in *Collins* did in fact contain the necessary disclosure, the court dismissed the plaintiff's claim.

As the Court sees it, the issue here is one of fitting the civil warrant into the right box: it is clearly a pleading, but is it a formal pleading for the purposes of the FDCPA? As indicated in *Collins*, there is support for the proposition that a civil warrant is not a *formal* pleading, even in cases Defendants rely upon. *Discover Bank*, 2008 WL 5272530, at *2 ("Even though the Tennessee Rules of Civil Procedure apply to General Sessions cases appealed to the Circuit Court, *see* Tenn. R. Civ. P. 1, the parties are not required to file formal pleadings.") (citing *Vinson v. Mills*, 530 S.W.2d 761, 765 (Tenn. 1975)); *id.* ("[A] plaintiff's pleading in general sessions court, in the form of a civil warrant, may be very informal . . . ."). But as Defendants note, a civil warrant is the only means of initiating a suit in General Sessions Court. Tenn. Code Ann. § 16-15-716 ("A civil action in the general sessions courts is commenced by a civil warrant . . . ."). The question, then, is

24

whether a debt collector must include a § 1692e(11) disclosure on every action initiated in General Sessions court.

Although the Court does so with some reservations, the Court concludes that a debt collector must indeed indicate that a civil warrant is a communication from a debt collector. Although Defendants are correct that a civil warrant is a *pleading*, it is not considered by Tennessee courts to be a *formal* pleading. In fact, this informality is one of the benefits of General Sessions court. Although one might impute a broader intent to the "formal pleading" exception in the FDCPA, Congress apparently sought to limit the scope of the exception to those pleadings that are "formal." Had Congress intended to exempt *all* pleadings it could have done so easily by not modifying the term pleading. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007) ("If W & A were correct that conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary."). "The amendment [adding the formal pleadings exception] by its terms in fact suggests that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA, *except* to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11)." *Id.*

Given the broad reach of the FDCPA, and bearing in mind the limited exception carved out by the "formal pleading" provision of § 1692e(11), the Court respectfully disagrees with *Lilly* and joins *Collins* in concluding that a civil warrant is not a formal pleading.[6] As such, the civil warrant in this case was a subsequent communication under § 1692e(11) that did not contain the required

---

[6] The court in *White* reaffirmed *Lilly* and rejected *Collins*. *White*, 2013 WL 5936679, at *9. The Court, however, agrees with *Collins* for the reasons stated herein.

disclosures.

Accordingly, Murr has established a violation of the FDCPA. There being no question of material fact, the Court will **DENY** Defendants' motion for summary judgment and will **GRANT** Murr's motion for summary judgment on this point.[7]

In his motion for partial summary judgment, Murr also claims *Tarpon* violated this section as the civil warrant was an *initial* communication between Tarpon and Murr that should have included the § 1692e(11) notice. 15 U.S.C. § 1692e(11) (prohibiting "[t]he failure to disclose in the initial written communication with the consumer and . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose"). Tarpon, however, argues the civil warrant was not a communication from Tarpon because Jones initiated it. Unfortunately Murr has not responded to this argument.

The case law the Court has located suggests a debt collector may be held liable for filing a lawsuit if it does not constitute a formal pleading. *See Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n.3 (6th Cir. 2007); *Sayyed*, 485 F.3d at 232; *Goldman v. Cohen*, 445 F.3d 152, 155 (2d Cir. 2006). *But see Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003). Although these cases were legislatively overruled when the relevant statute was amended to include a "formal pleadings"

---

[7] In response to Murr's motion for summary judgment, Defendants indicated they rely on the bona fide error defense, should the Court find Murr has proved a violation of the FDCPA. They point to the affidavits of Sturm and Jones, which discuss some procedures maintained by Tarpon and Jones. But none of the contents of these affidavits references the inclusion of a disclosure on a civil warrant. Moreover, there is no indication Jones usually includes the disclosure and mistakenly failed to do so here. Rather, it appears Defendants simply disagree as a legal matter that a disclosure is required on a civil warrant. The bona fide error defense does not apply to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010) ("[T]he bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."). The Court fails to see how the defense could help Defendants here.

26

exception similar to the exception at issue here, the cases suggest a *non*-formal pleading is such a communication. The Court has concluded Tarpon is a debt collector in this case. It is doubtful that a debt collector could avoid the FDCPA's provisions through the necessary expediency of hiring an attorney to act on its behalf. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp.2d 358, 366-67 (D. Md. 2010) (noting it is doubtful a debt collector could insulate itself from the disclosure requirements of § 1692e(11) and § 1692g by hiring an attorney). The Court therefore concludes Tarpon violated the FDCPA when it did not include the necessary disclosures on the civil warrant.

Accordingly, the Court will **DENY** Defendants' motion on Murr's § 1692e(11) claim against Tarpon alleging the civil warrant constituted an initial communication. There being no questions of fact, the Court will **GRANT** Murr's motion on this claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** both parties' motions (Court File Nos. 32, 35).

Regarding Defendants' motion, the Court will **GRANT** the motion with respect to Murr's claim that Tarpon violated the FDCPA when it did not obtain a collection license and his claim that Jones violated the FDCPA when he listed attorney's fees on the March 2010 demand letter. The Court will **DENY** Defendants' motion on Murr's claim that Tarpon is a debt collector, his claim that Tarpon is vicariously liable for Jones's violations, his claim that Jones violated the FDCPA when he did not indicate that interest was accruing in the March 2010 letter, and his claim that Jones and Tarpon violated the FDCPA when they did not disclose that the civil warrant was a communication from a debt collector.

Regarding Murr's motion, the Court will **GRANT** the motion with respect to his claim that

27

Tarpon is a debt collector and that Jones and Tarpon violated the FDCPA when they failed to

indicate that the civil warrant was a communication from a debt collector.  The Court will otherwise

**DENY** Murr's motion.

      **An Order shall enter.**

<u>**/s/**</u>                        
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**